IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

IN RE: )
CHARLIE L. HARVEY )
FLORA B. HARVEY, ) CHAPTER 7
 )
      Debtors. ) CASE NO. 10-71616

MEMORANDUM DECISION

The matter before the Court is a motion to approve a reaffirmation agreement ("the Agreement") signed by the Debtors[1] with respect to a debt secured by a purchase money security interest in a 2007 model Chrysler PT Cruiser. The Agreement contemplates the reaffirmation of the existing terms of the loan contract between Mr. Harvey and Chrysler Financial Services Americas, LLC ("Chrysler Financial"). At a hearing before the Court on September 7, 2010, Mr. Harvey testified that the creditor was unwilling to discuss any modification of the terms of the original contract. The Debtors are represented by counsel in this case, and their counsel appeared at the hearing. Although counsel indicated that she had reviewed the Agreement with Mr. Harvey and advised the Debtors concerning the reaffirmation, she further advised that she was unwilling to sign a certification of counsel with respect to the Agreement for the reason that there had been no "negotiation" of the terms of the agreement within the meaning of 11 U.S.C. § 524(c). This position presents the issue of the demarcation of the boundary line separating the responsibilities of debtor's counsel and the court with respect to approval or disapproval of reaffirmation agreements pursuant to 11 U.S.C. § 524. This issue has

---

[1] Although both Debtors signed the reaffirmation agreement, the debt was Mr. Harvey's alone, so Mrs. Harvey's signing was in error.

troubled the Court for some while and it concludes that the time has come to resolve it clearly so that the applicable principles to be observed by the undersigned judge in such matters are not left in ambiguity. For the reasons detailed below, the Court concludes its responsibilities and authority with respect to approval of reaffirmation agreements are limited to those situations where (i) bankruptcy debtors are not represented by counsel in the bankruptcy case, or (ii) they are represented by counsel in cases where a "presumption of undue hardship" has arisen pursuant to the provisions of 11 U.S.C. § 524(m) and their counsel has executed the certification prescribed by § 524(k)(5)(B) that even though the presumption of undue hardship has been established, "in the opinion of the attorney, the debtor is able to make the payment."

## FINDINGS OF FACT

The Agreement presently under consideration by the Court is one of two reaffirmation agreements which were originally scheduled to be heard on September 7. The other one was rendered moot prior to the hearing by one or both of the Debtors cashing out an IRA account and paying off the unpaid balance in the amount of approximately $7,913.92 owing to First Citizens Bank & Trust upon a 2006 model Cadillac STS sedan valued at $21,825. The proceeds of the account were not sufficient to pay off both contracts, but Mr. Harvey testified that he had placed the remaining proceeds in an account from which he was making monthly payments on the Chrysler Financial contract. The Debtors' income, currently from Social Security, is $2,363 per month, and their indicated monthly expenses, after eliminating the $636.89 payment on the Cadillac but counting in the $280.70 payment on the PT Cruiser, total $2,549.99, leaving a deficit of $186.99 per month. According to Mr. Harvey's certification in the Agreement, he projects that the Debtors will be able to make the remaining payments on the Cruiser through a possible loan from a family member. At the hearing he testified that he

2

expected to make up any shortfall by obtaining part-time employment, which he was confident he could manage. The balance owed as of the date of bankruptcy on the PT Cruiser according to the Agreement is $3,087.70.[2] In their schedules the Debtors valued the vehicle at $5,550. In the reaffirmation agreement, the value was listed as $9,900. In his testimony at the hearing, Mr. Harvey valued it at $8,000. He testified that he believed that it was in the best interests of his wife and himself that reaffirmation be approved. His counsel suggested in argument that if for any reason the Debtors proved unable to make the payments, the perceived excess of the vehicle's value over the debt against it would enable them to sell it and pay the remaining balance on the debt. Based on the preponderance of the evidence presented, the Court is satisfied that the Debtors will probably be able to make the remaining payments due on the contract without serious hardship.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The Court concludes that motions seeking its approval of reaffirmation agreements pursuant to 11 U.S.C. § 524 are "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(O) as involving "the adjustment of the debtor-creditor . . . relationship."

In order for a reaffirmation agreement to be enforceable, the agreement must comply with the requirements of § 524(c). One requirement listed in that section is filing the agreement along with, if the debtor was represented by counsel "during the course of negotiating" the reaffirmation agreement, a certification by such attorney that the agreement is a

---

[2] The total to be paid under the reaffirmation agreement is $3,268.70.

fully informed and voluntary agreement by the debtor, the agreement does not impose an undue hardship on the debtor or the debtor's dependents, and the attorney advised the debtor of the consequences of the agreement and any default under the agreement.  11 U.S.C. § 524(c)(3).  In addition, in cases where the debtor's income less expenses is less than the payment on the reaffirmed debt and the presumption of undue hardship therefore arises under § 524(m)(1), the attorney certification must also state "that in the opinion of the attorney, the debtor is able to make the payment."  11 U.S.C. § 524(k)(5)(B).

In addressing the issue of reaffirmation agreements which do not involve any of what is traditionally thought of as "negotiation" of the terms under which the petition date balances of specific debts will be reaffirmed, the Court concedes that there is some textual basis for the position taken by Debtors' counsel in this and other cases.  Indeed it has itself noted in a published opinion that "it is not clear what actual 'negotiation' there might be in [the situation where the reaffirmation is simply re-assumption of legal liability for the existing contract]."  *In re Hoffman*, 358 B.R. 839, 842 n.6 (Bankr. W.D. Va. 2006).  Similarly, in an article appearing in an issue of *Bankruptcy Law News* published by the Bankruptcy Section of the Virginia State Bar, titled *Reaffirmation Agreements Under BAPCPA*, it was noted that the language of § 524 of the Code seemed to contemplate the possibility that counsel representing a debtor in the bankruptcy case might not necessarily represent the debtor with respect to the negotiation of a reaffirmation agreement filed in that case.[3]  Furthermore, the Court, in a number of unpublished decisions, has noted its recognition of the conflict which can be created for counsel when the client desperately wants to reaffirm a particular debt but counsel finds herself or himself unable in good conscience

---

[3] William F. Stone, Jr. & Elizabeth B. Carroll, *Reaffirmation Agreements Under BAPCPA*, Bankruptcy Law News, Winter 2007, at 1, 4.

to sign the certifications needed from counsel pursuant to § 524 to make such reaffirmation legally effective.[4] Accordingly, the Court acknowledges its empathy with the position taken by counsel with respect to the Agreement. Nevertheless, after significant consideration of the issue, informed by the decisions reached by sister courts dealing with the same general subject matter, it has concluded that counsel representing bankruptcy debtors are obliged to perform the duties set forth in § 524 with respect to reaffirmation agreements even in situations where no bargaining of any kind takes place with respect to any modification of the terms of the debts being reaffirmed. Before setting forth its own precise reasoning, the Court will review the other decisions which have influenced its thinking.

In *In re Minardi*, 399 B.R. 841 (Bankr. N.D. Okla. 2009), the court provided guidance as to when an attorney must sign the certification required by § 524(c)(3). In *Minardi*, the attorney for the debtor excluded negotiation and review of reaffirmation agreements from the scope of services he provided to debtors. *Id.* at 844–45. The debtor, wishing to reaffirm a debt on an automobile, filed a reaffirmation agreement with the court, asserting that he was not represented by an attorney in connection with the agreement. *Id.* at 844. At the court hearing, the attorney for the debtor informed the court that he had explained the legal effect and consequences of entering into the reaffirmation agreement to the debtor, but he asserted that he had not represented the debtor in negotiating the agreement. *Id.* The court ruled that the attorney's attempt at limiting his services to exclude representation of the debtor in negotiating

---

[4] *See In re Woods*, No. 10-70870 (Bankr. W.D. Va. July 9, 2010); *In re Raymond*, No. 10-70693 (Bankr. W.D. Va. June 8, 2010); *In re Morris*, No. 09-72667 (Bankr. W.D. Va. Feb. 10, 2010); *In re Thomason*, No. 09-72339 (Bankr. W.D. Va. Dec. 29, 2009); *In re Allison*, No. 09-71737 (Bankr. W.D. Va. Dec. 4, 2009). Although none of these decisions was designated for publication, the *Raymond* case is reported at 20 CBN 1073, and all of the decisions can be found on the Court's website: http://www.vawb.uscourts.gov/Opinions/opinions.asp.

reaffirmation agreements was impermissible and, therefore, the attorney's failure to file the certification required by § 524(c)(3) rendered the reaffirmation agreement unenforceable. *Id.* at 856.

The first basis of the opinion was that, under the Oklahoma Rules of Professional Conduct, negotiation of reaffirmation agreements is among a set of core services that must be provided to a consumer debtor in a chapter 7 case in order to provide competent representation. *Id.* at 849–51. It went on to hold that any attempt to limit the representation to exclude such service would be unreasonable and therefore forbidden under the same legal ethics rules. *Id.* at 852. More importantly for present purposes, the court's second basis for its ruling was that the Bankruptcy Code itself required debtor's counsel to advise the debtor about the reaffirmation process and the effect of any agreement. *Id.* at 848. Tracing the history of the amendments to the Code that shifted primary responsibility for reviewing and approving reaffirmation agreements from the courts to debtor's counsel, the court stated that debtor's counsel had an "obligation under the Code to advise clients regarding what debt, if any, to reaffirm, and then to evaluate whether the agreements reached will impose an undue hardship. Counsel, having undertaken the representation of a debtor in a Chapter 7 case, may not escape these responsibilities." *Id.* at 852–54. Therefore, because the debtor had counsel of record in the bankruptcy case and the attorney did not sign the certification required by § 524(c)(3), the agreement was ineffective. *Id.* at 855.

This position has been adopted by the Bankruptcy Court for the Eastern District of Virginia in a series of cases. In perhaps the clearest statement of the rule, Judge Mayer stated that "where the debtor has counsel of record, counsel must make the required certifications in order for a reaffirmation agreement to be enforceable. This is true regardless of whether counsel

6

actually participated in the process of negotiating the reaffirmation agreement." *In re Rodriguez*, No. 08-12039, 2008 Bankr. LEXIS 1877, at *1, 2008 WL 2509373, at *1 (Bankr. E.D. Va. June 23, 2008).  In addressing the same argument in another case, the court stated that Congress, unwilling to leave the decision on whether to reaffirm a debt with the debtor alone, sought to insert "counsel's considered reluctance to approve onerous and ill-advised reaffirmation agreements" into the decision-making process.  *In re Isom*, No. 07-31469, 2007 Bankr. LEXIS 2437, at *11–12, 2007 WL 2110318, at *3 (Bankr. E.D. Va. July 17, 2007) (Huennekens, J.).  The attorney cannot avoid performing this function by refusing to aid the debtor in the reaffirmation process, as such agreements "are an integral part of chapter 7 representation of debtors.  By accepting a chapter 7 case, counsel is accepting all aspects of the case including counseling with respect to reaffirmation agreements, negotiations with creditors with respect to reaffirmation agreements, and representing debtors in court with respect to reaffirmation agreements."  *Id.* at *12, 2007 WL 2110318, at *3 (quoting *In re Carvajal*, 365 B.R. 631, 632 (Bankr. E.D. Va. 2007) (Mayer, J.)).

In *In re Perez*, No. 7-10-11417, 2010 Bankr. LEXIS 2229, 2010 WL 2737187 (Bankr. D.N.M. July 12, 2010), the court reached a similar conclusion.  The debtor entered into a reaffirmation agreement, apparently on the same terms as the original contract.  *Id.* at *4, *39–40, 2010 WL 2737187, at *2, *9.  The attorney representing the debtor signed the attorney certification, but crossed out the statement that "the agreement does not impose an undue hardship on the debtor or a dependent of the debtor" and did not check the box that stated that although the presumption of undue hardship had been established, the attorney was of the opinion that the debtor could make the payment.  *Id.* at *5, 2010 WL 2737187, at *2.

Because the attorney made some of the required certifications, the court presumed

7

that the debtor was represented by counsel during the course of negotiating the agreement. *Id.* at

\* 9, 2010 WL 2737187, at \*3.  Going further, the court ruled that exclusion of such

representation in a chapter 7 case involving a consumer debtor would be an impermissible

limitation on representation. *Id.* at \*10, 2010 WL 2737187, at \*3.  In so ruling, the court gave

some guidance on its expectations of what such representation would entail:

> Representing the debtor during the course of negotiating a reaffirmation agreement should at a minimum include counseling the debtor in regard to 11 U.S.C. § 521(a)(2), advising the debtor with respect to the matters described in 11 U.S.C. § 524(c)(3)(A) and (C), working with the debtor to complete the reaffirmation agreement, and assisting the debtor with respect to any negotiations with the creditor. If such negotiations take place, counsel should exercise professional judgment regarding the form of such assistance, which for example could take the form of direct negotiations by counsel with the creditor or counseling the debtor with respect to the debtor's negotiations with the creditor.

*Id.* at \*9 n.4, 2010 WL 2737187, at \*3 n.4.  Because the debtor's counsel did not make all of the

required certifications in connection with filing the agreement, it was unenforceable. *Id.* at

\*20–21, 2010 WL 2737187, at \*5.

Finally, and most recently, the Bankruptcy Court for the Northern District of

Texas provided a lengthy discussion of the proper process for entering into a reaffirmation

agreement in *In re Grisham*, No. 10-32524-SGJ-7, 2010 Bankr. LEXIS 2907 (Bankr. N.D. Tex.

Sept. 7, 2010), which has graciously been provided to the Court by Debtors' counsel.  In its

discussion, the court noted that among the situations requiring a bankruptcy court to conduct a

hearing upon a proposed reaffirmation agreement is one in which the debtor is not represented

by counsel during the course of negotiating such agreement. *Id.* at \*8–9.  As part of this

discussion, the court stated that it was "dismayed" that some agreements were being filed by

debtors who were represented in the bankruptcy case itself without their attorneys' certifications.

*Id.* at *9. It went on to state that this situation required the court to hold a hearing so that the court could make the findings required by § 524(c)(6) in cases where the debtor was not represented by counsel during the course of negotiating the agreements, *id.*, thereby seeming to allow for the possibility that the agreements would be enforceable in such cases without the attorney's certification. Ultimately, however, the court found this behavior by attorneys to be "unacceptable," stating that "[i]t should be considered a basic part of chapter 7 debtor-representation that an attorney advise his client as to something as fundamental and significant as a reaffirmation agreement and assist him in negotiation of the same." *Id.* at *10. Addressing the assertion by some attorneys that they do not feel comfortable signing reaffirmation agreements when they do not feel them to be in their client's best interests, the court stated that, first, as a trusted advisor, the attorney should try harder to dissuade the client from entering into an agreement the attorney feels is not in the client's best interest. *Id.* at *10–11. In addition, since the form certification does not require the attorney to certify that the agreement is in the debtor's best interest, it would be "the more ethical and honorable course of action" for the attorney to sign the required certification and, if a hearing is required because the presumption of undue hardship has been triggered, to explain the situation, and perhaps even that the attorney did not believe the agreement to be in the debtor's best interest, to the court. *Id.*

This Court, in its *Raymond* decision earlier this year, held that under the facts presented there, where debtors' counsel told the debtors that she would not represent them with respect to reaffirmation agreements and did not sign the certification form because the collateral was not worth as much as the amount of the debt being reaffirmed, counsel did represent them during the course of negotiation of the reaffirmation agreement and the attorney's unwillingness to certify all that was required by the provisions of the statute was fatal to the reaffirmation

9

agreement's viability.[5]  In that case the reaffirmation was upon the original contractual terms of the reaffirmed obligation, as is also presented here, but counsel did not advance the argument asserted by Debtors' counsel in this case that the absence of any actual "negotiation" between the creditor and the debtor took the matter outside of the parameters of the rule applicable when counsel is involved in the actual give-and-take of discussions which result in a modified

---

[5] *In re Raymond,* No. 10-70693, slip op. at 2, 5–6 (Bankr. W.D. Va. June 8, 2010).  In so ruling, this Court stated:

> This Court has previously ruled [in *In re Allison*] that 11 U.S.C. § 524(c), (d), and (k)(5) do not provide for the Court to approve a reaffirmation agreement when the debtor has been represented by counsel "during the course of negotiating" a reaffirmation agreement except in the very limited situation that the attorney has certified that in his/her opinion the "debtor is able to make the payment" even though a presumption of undue hardship has been established.  In such a situation it is the responsibility of the Court to determine whether the presumption of "undue hardship" has been "rebutted to the satisfaction of the court" pursuant to 11 U.S.C. § 524(m)(1), and then only if the creditor is not a credit union within the provision of 11 U.S.C. § 524(m)(2).  The Code does not authorize the Court to relieve counsel for the debtor of counsel's responsibility under such section when the attorney is not willing to certify but the client still wants to reaffirm.  *See In re Calabrese*, 353 B.R. 925 (Bankr. M.D. Fla. 2006).  If the attorney is not willing to certify in the first place, that is supposed to be the end of the matter and the reaffirmation agreement is not legally effective.  The Court recognizes that these provisions create a very definite tension between an attorney's role as counselor to the client and that of advocate to assist the client in accomplishing the latter's lawful objectives.  The way § 524 is constructed makes the attorney, in effect, a gate keeper against well intentioned but ill advised reaffirmations of existing obligations, at least in those situations in which the attorney is representing the debtor with respect to such matters.

*Id.* at 4.

agreement. For the reasons immediately following, the Court declines to accept this proposed distinction.

First, the Court agrees with decisions of its sister courts that the subject of reaffirmation of debts which otherwise will be discharged in bankruptcy is of such importance to the relief being sought by the client that it is unreasonable to condone any attempted exclusion of any legal services related to such a matter from those legal services deemed essential to the full and requisite representation of a consumer bankruptcy debtor. In short, this is not a responsibility which the Court should permit a bankruptcy debtor to waive, as it is one of those essential services the attorney is to provide the client in arriving at a resolution of his or her obligations to creditors. The issue of whether a consumer debtor will reaffirm particular debts, while not presented in every case to be sure, is one which generally will be considered even before filing the petition because an individual debtor, by virtue of 11 U.S.C. § 521(a)(2)(A), is required within thirty days of filing a petition to execute and file a statement of intention with regard to the surrender or retention of estate property subject to liens. The attorney for a bankruptcy debtor is obliged to be more than just an order taker from the client, rather the role of counselor and adviser is a part of the total professional obligation undertaken. Counsel for the Debtors in this case does not dispute the validity of this general principle, but bases her argument on the interpretation of the meaning of "representation during the course of negotiation."

Second, while the Court acknowledges the reasonableness of counsel's argument that there has been no "negotiation" where no bargaining has occurred about the terms upon which the obligation will be reaffirmed, it is not clear that Congress intended that such a process would occur in every case. The two principal definitions of "negotiation" appearing in *Black's Law Dictionary* deal with a process of offers and counteroffers until one of them is finally

accepted, on the one hand, and the transfer of an instrument in such manner that the transferee becomes the owner, on the other. Another definition offered, however, is "the act of settling or arranging the terms and conditions of a bargain, sale, or other business transaction."[6] If the creditor's position is that it will not consider anything other than a reaffirmation of an obligation upon the original terms, and the contract debtor is willing to sign an agreement so providing, it seems that the signing of the paperwork to that end would constitute a "settling" of the terms of the reaffirmation. Congress did not provide in the statute a definition as to what it had in mind when it employed the term "negotiation," so we don't know for sure what was intended. It is not unusual, of course, for an obligation to be reaffirmed upon different terms than originally agreed upon, so it certainly seems plausible that Congress did contemplate that dynamic at work in the reaffirmation process. We seem to be on much shakier ground, however, when we then make the inference that Congress intended to permit a different rule for counsel's responsibilities when the reaffirmation involves no modification of the contractual terms, and the debtor, after presumably swallowing hard, decides to reaffirm the debt upon the only terms available. In either case both the debtor and his or her counsel can make an assessment of whether any particular reaffirmation is or is not in the debtor's best interest. A persuasive policy argument as to why Congress might have intended to require more of counsel, or to provide a different legal result, with respect to an obligation reaffirmed upon adjusted terms rather than one reaffirmed upon the original terms, has not been offered by counsel or discerned by the Court.

---

[6] *Black's Law Dictionary* 1036 (6th ed. 1990).

Third, it is clear that the general intent of Congress in the enactment of "BAPCPA,"[7] with respect to debts secured by automobiles and other personal property, was to eliminate the "ride through" option[8] to bankruptcy debtors which enabled them to retain the benefit of the original arrangements with the creditors, i.e., retention of the possession and use of the vehicle or other property for so long as payments were maintained in a current status, without re-assuming the burden of legal liability upon the debt in the event it might later appear advantageous to let the collateral go back to the creditor.  Although the framework created by the statutory language to carry out this general intent clearly has a "hole" in it, the Court, after considerable soul searching, concludes that it is not appropriate for it to participate in any process by which bankruptcy debtors represented by counsel are enabled to obtain the benefit of a so-called "ride through" option by the simple expedient of counsel, in difficult factual situations, neither signing the certification(s) provided by the statute nor acting as a "gate keeper" by saying "no" to his or her client, but standing aside, as it were, while the client signs the reaffirmation agreement, returns it to the creditor, and then the creditor files it with the court so a hearing can be set with the court making a determination to approve or disapprove the reaffirmation agreement just as if the debtor were proceeding without the benefit of counsel.  In such a situation the Court concludes that such an agreement has no more legal effect than one signed by the debtor and the creditor but not certified by debtor's counsel and never filed with

---

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified as amended in scattered sections of 11 U.S.C.).

[8] *See Daimler Chrysler Fin. Servs. Am., LLC v. Jones (In re Jones)*, 591 F.3d 308, 311 (4th Cir. 2010).

the Court.[9]  To do otherwise inevitably entails the Court acquiescing in situations where reaffirmations take on a life of their own and move forward in those cases where counsel is unwilling in good faith to sign the certification(s) needed for the reaffirmations to be effective but the client is unwilling to accept the consequences of the attorney's exercise of his or her professional responsibility.  The statute does not impose that requirement only when the burden of accepting it is light and willingly accepted.  Neither does it authorize the bankruptcy court to expand its authority by taking over and making the call when counsel is unwilling to do so.  For the Court nevertheless to do so, particularly in circumstances in which court approval of the reaffirmation is doubtful, results in a very powerful incentive to debtors and their counsel not to make the hard choices themselves but to try and put them before the court and by a process of some judicial alchemy turn dross into gold, i.e., obtain the benefit of the "ride through" option without having incurred the burden of re-assumption of liability upon the obligation.  This frankly is a slippery slope both for counsel and the Court, which concludes that the best thing to do when asked to step onto such a slope is to decline the opportunity.

For the reasons noted the Court will enter a contemporaneous order denying the motion to approve the Agreement.

---

[9] *But see In re Medley*, No. 08-70572, slip op. at 1–2 (Bankr. W.D. Va. Aug. 11, 2008). In *Medley*, this Court accepted the joint position of the debtor and her bankruptcy counsel that he did not represent her in connection with the negotiation of the reaffirmation agreement and approved the agreement.  *See id.* at 1, 7.  A presumption of undue hardship was created, but the debtor had equity in her vehicle as well as other financial resources as a result of the settlement of a personal injury claim which she was able to claim as exempt pursuant to applicable state law.  *Id.* at 4–6.  To the extent that the decision is inconsistent with the ruling made in the present case, it is overruled.

DECIDED this 21st day of September, 2010.

                                          */s/ William F. Stone, Jr.*
                                        UNITED STATES BANKRUPTCY JUDGE

.